UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ANTHONY ROSE,

    Plaintiff,

v.

SEVIER COUNTY, TENNESSEE, ex rel., et al.,

    Defendants.

No. 3:08-cv-25
Phillips/Guyton

# MEMORANDUM OF LAW IN RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Comes the Plaintiff, by and through counsel, pursuant to Fed. R. Civ. P. 56 and files this memorandum of law and argument in support of his Response to Defendants Sevier County, Sevier County Sheriff's Department, Ronald L. Seals, Paul Lintner (in his official capacity), Ken Hatcher, and Don Parton's motion for summary judgment.

## INTRODUCTION

This action arises from incidents in the Sevier County Jail, wherein Paul Lintner, a supervisor in the jail and known homosexual with admitted attractions to inmates (Kinton Aff.)(Ex. a); (Lintner Dep. p. 70)(Ex. d); (Cavnar compl. letter)(Ex. o), would sexually harass Plaintiff, engage in inappropriate sexual contact with Plaintiff and forced Plaintiff to have sex with him. (Comp. ¶¶ 14-16, Doc. 1); (Kinton Dep. p. 18)(Ex. e); (Judgment)(Ex. n).

1

# FACTS

In approximately 1993, Defendant Paul Lintner was convicted of Federal tax evasion stemming from his embezzlement of $3,500,000.00. (Lintner Dep. pp. 10-11)(Ex. d). Later, in approximately 2000, Defendant Lintner was convicted of another felony embezzlement charge, this time in Sevier County, and was required to serve approximately eighteen (18) months in the Sevier County Jail before being released onto probation. (Lintner Dep. pp. 14-15)(Ex. d). The very day of Paul Lintner's release from the Sevier County Jail onto probation, July 1, 2001, Defendant Lintner was hired by Sevier County as the jail Kitchen Supervisor. (Lintner Dep. pp. 19-23)(Ex. d); (Employment App. Exhibit R Int. 4)(Ex. s).

Defendant Paul Lintner carried the title of Kitchen Supervisor. (Defendants' Resp. to Pl.'s Interrog. No. 7) (Ex. k). However, Paul Lintner answered only to Sheriff Bruce Montgomery, and the two were friends. (Defendants' Resp. to Pl.'s Interrog. No. 8, 13)(Ex. k); (Rose Dep. pp. 143-144)(Ex. f); (Seals Dep. p. 49)(Ex. g). Defendant Lintner also loaned money to Defendant Don Parton and would help pay for some of Defendant Parton's family vacation costs when they would vacation together. (Lintner Dep. pp. 54, 56-57)(Ex. d); (Don Parton Dep. p. 14)(Ex. h). Defendant Paul Lintner would also contribute to the campaigns of Defendant Don Parton for County Commissioner and Ron Seals for Sheriff and also managed the campaign for Defendant Parton. (Lintner Dep. p. 56)(Ex. d)(Seals Dep. pp. 72, 81-82). In reality, Paul Lintner was in charge of the jail and essentially did as he pleased with impunity. (See Rose Dep. p. 143, ll. 6-20)(Ex. f); (Clark Aff.)(Ex. b); (Exhibit A to Fisher Aff.)(Ex. c); (Cavnar compl. letter)(Ex. o).

Defendant Lintner would personally select kitchen trustees and made the rules for the kitchen. (See Hatcher Dep. pp. 19-20)(Ex. i); (Don Parton Dep. p. 13)(Ex. h); (Lintner Dep. pp.

2

23, 26)(Ex. d). One of Defendant Lintner's verbal directives to trustees was: "what happens in the kitchen stays in the kitchen." (Lintner Dep. p. 31)(Ex. d). Defendant Lintner had the authority to lock down trustees (Don Parton Dep. pp. 32-33)(Ex. h) and knew that placing a trustee into the jail general population created problems for the trustee because the general population resented trustees. (Lintner Dep. p. 39)(Ex. d). Trustees were fearful of retaliation for reporting Defendant Lintner's behavior. (Cavnar letter)(Ex. o); (Cavnar taped interview)(Ex. q). In fact, everyone knew to avoid causing trouble for Paul Lintner for fear of retaliation. (Clark Aff. ¶ 12)(Ex. b).

Defendant Paul Lintner had a long history of inappropriate behavior toward inmates and sexually abusing inmates well prior to the Plaintiff's incarceration. Defendant Lintner, who was admittedly sexually attracted to some of the trustees, would buy trustees gifts, allow trustees to smoke, took Plaintiff home for Christmas, would take all trustees to the Golden Corral Restaurant for Christmas, would give trustees hugs, and pop trustees on the buttocks and penis, and would make sexual remarks. (Lintner Dep. pp. 33-36; pp. 61-62; pp. 70-73)(Ex. d); (Cavnar letter)(Ex. o); (Cavnar interview)(Ex. q). Defendant Lintner did not conceal such behavior. (Lintner Dep. pp. 105, 115)(Ex. d). And as Captain McMahon stated: "[N]ot much goes on these walls that people don't know." (Cavnar interview, tape 2, p. 48)(Ex. q).

On January 25, 2006, prior to Plaintiff's incarceration, Justin Cavnar made a formal complaint about Defendant Paul Lintner's behavior, and around that same time inmate Michael Gains made one as well. (See Cavnar letter)(Ex. o); (Gains letter)(Ex. p); (Lintner Dep. p. 75)(Ex. d). Defendant Lintner was never even questioned by the jail administration about those complaints. (Lintner Dep. pp. 75-77)(Ex. d). On or about January 30, 2006, Justin Cavnar's complaint was given to Captain Hatcher by former officer Loretta Clark. (See Clark Aff. ¶¶ 13-

3

17)(Ex. b); (Hatcher Dep. p. 23)(Ex. i). Following this report, Justin Cavnar and Michael Gains were locked down, sent to the penitentiary, and Loretta Clark was demoted and forced to resign. (Aff. Clark)(Ex. b); (Don Parton Dep. pp. 38-39)(Ex. h).

In Justin Cavnar's letter of January 2006, which was prior to Plaintiff's subject incarceration, Mr. Cavnar informed the jail officials, including Defendants Hatcher and Seals, that Defendant Lintner's behavior had been going on for a long time, that Defendant Lintner was a homosexual, that Defendant Lintner selected trustees he found to be cute and used the kitchen as his "candy shop," that Defendant Lintner kissed trustees and touched them inappropriately, that Defendant Lintner had "felt him up," that Defendant Lintner had Mr. Cavnar show him his penis and that it was Defendant Lintner who was in control of the jail. (Cavnar letter)(Ex. o). In a taped interview prior to Plaintiff's incarceration, Mr. Cavnar also told Defendant Seals and Captain Larry McMahon about Defendant Lintner making inmates strip naked under the auspices of looking for sores, and Mr. Cavnar told them that the inspections were not done in medical and no medical personnel was present. (Cavnar taped interview)(Ex. q). Mr. Cavnar also told them about inappropriate behavior, gift buying and allowing trustees to smoke. (Ex. q).

Plaintiff was incarcerated from approximately March 2006 to February 2007. During Mr. Rose's period of incarceration, he was forced to have sex with Paul Lintner approximately 40 times. (Rose Compl., Doc. 1, case no. 3:08-cv-25); (Rose Dep. pp. 95-97; 137-138)(Ex. f). Following Mr. Rose's release and on or about February 1, 2008, Mr. Rose filed a complaint in the United States Eastern District Court, and some time afterward, Paul Lintner resigned from the Sevier County Jail on his own volition. (See Lintner Dep. p. 101)(Ex. d); (Seals Dep. pp. 72-73, 76)(Ex. g). On or about December 8, 2009, Paul Lintner pled guilty in Sevier County

4

Criminal Court to sexual contact with an inmate in regard to Mr. Rose. (Lintner Dep. p. 74)(Ex. d); (Judgment)(Ex. n).

## LAW AND ARGUMENT

### Summary Judgment Standards

In moving for summary judgment, the burden is on the moving party to conclusively show that no genuine issue of material fact exists, and the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. White v. Turfway Park Racing Ass'n, Inc., 909 F.2d 941, 943 (6th Cir. 1990). The Judge's role is not to weigh the evidence but instead is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The central issue is whether the evidence shows a sufficient disagreement to require submission to the jury or whether the facts are so one-sided that one party must prevail as a matter of law. Id. at 251-252.

1. Sevier County Sheriff's Department is not subject to suit

Plaintiff agrees that its claims against the Sevier County Sheriff's Department should be dismissed since Sevier County, Tennessee is named in the lawsuit.

2. Plaintiff's claims against the individual Defendants in their official capacities are duplicative and redundant given that Plaintiff also sued Sevier County

Defendants assert that Plaintiff's claims against Defendants in their official capacity should be dismissed. Defendants simply cite a case for the premise that suing a party in their official capacity is to be treated as a suit against the entity. Citing Ramos-Macario, 2011 U.S. Dist. LEXIS 21461, at *25. However, Defendants cite no authority which requires dismissal of official capacity claims against the individual. To the contrary, in Oliver v. Lenawee County, No. 83-4872, 1987 U.S. Dist. LEXIS 15433 (E.D. Mich. 1987), the plaintiff in that case sued the

jail administrator and sheriff in their individual and official capacities, and the court refused to dismiss the jail administrator and sheriff from the lawsuit. Id. at *5-6. Accordingly, Defendants' argument is without merit.

> 3. Sevier County retains immunity from all of Plaintiff's Civil Rights Claims and Constitutional Claims under Tenn. Code Ann. § 29-20-205(2).

The Defendants' motion argues that Sevier County is immune from all of the Plaintiff's civil rights claims. Defendants' argument is misplaced. Defendants cannot rely upon a state law defense to a federal § 1983 claim without violating the Supremacy Clause. "The elements of, and the defenses to, a federal cause of action are defined by federal law." Howlett v. Rose, 496 U.S. 356, 376 (1990). There is no "[b]asis for concluding that the Eleventh Amendment is a bar to municipal liability." Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658 at fn. 54 (1978) citing Fitzpatrick v. Bitzer, 427 U.S. 445 (1976) and Lincoln County v. Luning, 133 U.S. 529 (1890). Municipal defenses, including an assertion of sovereign immunity to a federal right of action claim are controlled by federal law. Owen v. City of Independence, 445 U.S. 622 at 647 (1980). "By including municipalities within the class of 'persons' subject to liability for violations of the Federal Constitution and laws, Congress-the supreme sovereign on matters of federal law-abolished whatever vestige of the State's sovereign immunity the municipality possessed." Id. at 647-648. Other jurisdictions have found that state sovereign immunity "is not relevant to a determination of whether a party is immune from § 1983 liability because only federal jurisprudence is controlling on this issue." Jefferson County Fiscal Court v. Peerce, 132 S.W.3d 824 (KY. 2004)(holding that is it clear that conduct by persons acting under color of state law which is wrongful under 42 USC § 1983 ... cannot be immunized by state law.)(quotations omitted), relying on Howlett, 496 U.S. at 376.

6

With regard to immunity to related state law civil rights claims, Defendants' reliance on Campbell v. Anderson County, 695 F.Supp. 2d 764 (E.D. Tenn. 2010) is misplaced. The court in Anderson stated that under the Tennessee Governmental Tort Liability Act (TGTLA), §29-20-205, a county cannot be held liable for negligence based on alleged intentional torts by an employee. Campbell, 695 F.Supp. at 777. The court further stated that a county has immunity from suit under the TGTLA unless a plaintiff can prove that the county committed a negligent act or omission which proximately caused a plaintiff's injuries. Id. So, "[f]or [a plaintiff] to prevail on her claim seeking to hold the County liable for the intentional torts allegedly committed by [an employee], she is required to prove that an independent act of negligence by the County or a County employee proximately caused the intentional torts that resulted in her injuries." Id. (citing Baines v. Wilson County, 86 S.W.3d 575 (Tenn. Ct. App. 2002)).

Unlike Campbell, here, Defendants knew and had prior complaints of Defendant Lintner's inappropriate sexual behaviors toward inmates and/or trustees, and Plaintiff has alleged common law negligence by the County itself in the hiring, training, retention and supervision of Defendant Lintner. (Compl. ¶¶ *40-45*.). Accordingly, Defendants' argument is without merit.

4. <u>Sheriff Ronald Seals is immune from all state law claims under Tenn. Code Ann. § 8-8-301.</u>

Tennessee Code Annotated § 8-8-301 deals with a sheriff's immunity for wrongs of deputies. However, Plaintiff has alleged wrongful conduct on the part of Sheriff Seals. (Compl. ¶¶ 40-45). Accordingly, Defendants' argument is without merit.

5. <u>Plaintiff's claims against Sevier County under 42 U.S.C. §1983 fail to state a claim because *respondeat superior* is not a proper basis of liability under § 1983</u>

Nowhere in Plaintiff's complaint is the theory of *respondeat superior* even mentioned, and Plaintiff's claims against Sevier County are not based upon the theory of *respondeat*

7

*superior*. Plaintiff has sued Sevier County for its policies and customs that caused or were related to Plaintiff's constitutional violations and injuries, including policies or customs of inadequate training, supervision and discipline. (Compl. *¶¶ 20-33*).

A local government is a "person" for purposes of § 1983 and therefore a local government is liable for the constitutional violations that it causes. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690-691; Doe v. Claiborne County, 103 F.3d 495, 505-506 (6th Cir. 1996). A local government as an entity is responsible under § 1983 when execution of that government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. Feliciano v. City of Cleveland, 988 F.2d 649, 654 (6th Cir. 1993)(quoting Monell, 436 U.S. at 694)). Moreover, a local governmental entity is liable under § 1983 if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights. Oviatt v. Pearce, 954 F.2d 1470 (9th Cir. 1992)(citing City of Canton, 489 U.S. at 388); see also Memphis, Tenn. Area Local Am. Postal Workers Union v. City of Memphis, 361 F.3d 898, 902 (6th Cir. 2004); Monell, 436 U.S. at 690-691; Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Before a governmental entity may be liable for failure to act, a plaintiff must demonstrate that the official policy evidences a "deliberate indifference" to a person's constitutional rights. Oviatt, 954 F.2d at 1477-1478. This occurs when the need for more action is so obvious and the inadequacy of the current procedure is so likely to result in a violation of constitutional rights, that the policy makers can reasonably be said to have been deliberately indifferent to the need. Id. "Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." Id.

It is not necessary that the policy causing the constitutional violation be written, adopted and/or ratified as formal law; rather, custom or usage is sufficient to satisfy the standard for

municipal liability pursuant to § 1983. Local governments may be sued for constitutional violations even though the custom has not received formal approval through the body's official decision making channels. Rose v. Saginaw County, 353 F.Supp.2d 900 (E.D. Mich. 2005) (citing Berry v. City of Detroit, 25 F.3d 1342, 1345 (6th Cir. 1994)).

Another way to prove an unlawful policy or custom is to show a policy of inadequate training, supervision or discipline. City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989); Ellis v. Cleveland Municipal School District, 455 F.3d 690, 700 (6th Cir. 2006); Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994). A municipality may be liable under § 1983 where a municipality's failure to train, supervise or discipline evidences a "deliberate indifference" on the part of a County to the rights of persons with whom its employees come into contact. City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989); Oklahoma City v. Tuttle, 471 U.S. 808 (1985). To succeed on a failure to train, supervise or discipline, the plaintiff must prove the following: (1) the training or supervision or retention was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. See Ellis, 455 F.3d at 700.

Here, the Sevier County Jail had policies and customs that were unconstitutional and known to the jail officials prior to Plaintiff's subject incarceration. Sevier County chose to ignore and act with deliberate indifference to Paul Lintner's inappropriate and/or sexual behavior and allowed Paul Lintner to run the jail as he pleased. Sevier County simply refused to train, supervise or discipline Paul Lintner, or even question him for that matter. The unconstitutional acts complained of by Plaintiff in this case resulted from acts made known to Sevier County before Plaintiff's incarceration. Sevier County allowed Paul Lintner's inappropriate sexual and

9

fraternizing behavior to continue and allowed Paul Lintner to retaliate, and indeed itself retaliated, against those who challenged him. Accordingly, Sevier County is liable.

6. Plaintiff's claims against Don Parton, Ronald Seals, and Ken Hatcher in their individual capacities fail as a matter of law because Don Parton, Ronald Seals, and Ken Hatcher are entitled to qualified immunity.

Supervisory Liability

Plaintiff also brought suit against Defendants Sheriff Seals, Captain Hatcher and Captain Parton pursuant to the theory of supervisory liability. (Compl. ¶¶ *34-36*). "The principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1993). This liability is not premised upon *respondeat superior* but upon a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care. Shaw, 13 F.3d at 798. For a supervisory official to be individually liable, a plaintiff must show at a minimum that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. Lee v. Metro. Gov't. of Nashville, No. 3:06-0108, 2008 U.S. Dist. LEXIS 12956, at *20 (E.D. Tenn. 2008). A supervisor does not have to have direct participation; instead, a supervisory official may be liable if he or she has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act. Id. at *26. "In light of the Sixth Circuit's language in DeMerrell and its holding in Leach, and in light of the most straightforward interpretation of the language in Hays, the court believes that it is also the law in this Circuit that supervisory liability can be conditioned either on direct participation or implicit authorization." Id. at 27-28. Such a claim requires that the official had knowledge of the offending employee's conduct at a time when the

conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. Reynolds v. Warzak, No. 2:09-cv-144, 2011 U. S. Dist. LEXIS 101398 (W.D. Mich. Sept. 7, 2011)(citing Gibson v. Foltz, 963 F.2d 851, 854 (6th Cir. 1992)). In addition, the defendant had to have some authority to act. Id. (citing Birrell v. Brown, 867 F.2d 956, 959 (6th Cir. 1989) (additional citations omitted)). Moreover, DeMerrell cited authority from the Third and First Circuits indicating that liability can exist in cases where the defendant officer did not know about the specific conduct at issue but did tolerate a general practice of unconstitutional conduct. Lee, 2008 Lexis 12956 at *23-24 (citations omitted); see also Shaw, 13 F.3d 791, summary judgment denied when officer had shot and killed an individual after supervisor had ignored three (3) prior complaints of excessive force). "[A supervisor's] inaction raises genuine issues of material fact as to whether he "was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." Shaw, 13 F.3d at 800.

A determination of supervisory liability is ordinarily one of fact, not law. Shaw, 13 F.3d at 798-799. Given the facts noted above in this memorandum, there are disputed issues of fact as to whether Defendants authorized, approved, and knowingly acquiesced in the unconstitutional conduct of Paul Lintner.

## CONCLUSION

There are disputed issues of material facts as to whether or not all Defendants had not only constructive knowledge, but actual knowledge, of constitutional violations to the trustee inmates of the Sevier County Jail. Defendants Seals and Parton knew of Defendant Lintner's inappropriate sexual behavior and of the inmate fear of retaliation. Defendant Lintner knew his actions to be unlawful, as did the remaining Defendants, who made a deliberate choice to ignore the violations, not further supervise Mr. Lintner, or discipline him, or even question him for that

matter. This overall deliberate indifference led to the violation of Plaintiff's constitutional rights. There are numerous disputed issues of material fact in this case for which summary judgment would be improper.

## REQUEST FOR A HEARING

Pursuant to Local Rule 7.2, the Plaintiff respectfully requests that the Court hold a hearing before the resolution of this matter.

Respectfully submitted this 17th day of November, 2011.

PEMBERTON & SCOTT, PLLP

s/ Dana Scott Pemberton
Dana Scott Pemberton, BPR No. 018214
9539 Kingston Pike
Knoxville, TN 37922
(865) 531-1941
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2011, a copy of the foregoing Memorandum of Law in Response to Defendants' Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

s/ Dana Scott Pemberton
Dana Scott Pemberton, BPR No. 011095
9539 Kingston Pike
Knoxville, TN 37922
(865) 531-1941
Attorney for Plaintiff