UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ANTHONY ROSE,                    )
                                 )
        *Plaintiff*,              )
                                 )
v.                               )    No.:  3:08-cv-25
                                 )         (Judge Phillips)
                                 )
SEVIER COUNTY, TENNESSEE,        )
et al.,                          )
                                 )
        *Defendants*.             )

## MEMORANDUM AND ORDER

This is a civil rights action pursuant to 42 U.S.C. § 1983; plaintiff also seeks relief under the Tennessee Governmental Tort Liability Act, the Tennessee Constitution, and Tennessee common law. Plaintiff is represented by counsel. The matter is before the court on the motion for an extension of time within which to file a motion to exclude expert testimony and the joint motion in limine filed by the defendants to exclude the expert opinions of Charles G. Fisher.[1] The motion for extension of time [Court File No. 47] is **GRANTED NUNC PRO TUNC** as of December 7, 2011. For the following reasons, the motion in limine to exclude the expert opinions of Charles G. Fisher [Court File No. 51] will be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] There is also pending the defendants' motion for summary judgment, which will be addressed in a separate Memorandum and Order.

In his complaint, plaintiff alleged that while confined in the Sevier County Jail he was subjected to sexual harassment, sexual assault, and rape by defendant Paul Lintner. The unconstitutional conduct allegedly began in April 2006 and continued until plaintiff's release on February 5, 2007. At the time defendant Lintner was employed by Sevier County, Tennessee, as the Food Service Supervisor, which included being the supervisor of the jail kitchen and the supervisor over all the jail trustees. Defendant Lintner was subsequently convicted, upon his guilty plea, to one count of Sexual Contact with an Inmate, a Class E felony. Plaintiff also named as defendants Sevier County, Tennessee; the Sevier County Sheriff's Department; Sevier County Sheriff Ronald L. Seals; Captain Ken Hatcher; and Captain Don Parton.

In response to the defendants' motion for summary judgment, plaintiff relies, *inter alia*, on the Statement of Opinions of Charles G. Fisher. [Court File No. 44, Response to Motion for Summary Judgment, Attachment 3, Affidavit of Charles G. Fisher, Exhibit A, Fed. R. Civ. P. 26(a)(2) Expert Disclosure of Charles G. Fisher]. Mr. Fisher makes seven Statements of Opinion.

He first opines that the hiring of defendant Paul Lintner as the Food Services Supervisor was "a clear case of deliberate indifference on the part of Sevier County." [*Id.*, Exhibit A, p. 2]. The basis for this opinion is that defendant Lintner had been convicted of embezzlement and was himself an inmate in the Sevier County Jail prior to his hiring, and was in fact hired the day of his release. [*Id.* at 2-3]. According to Mr. Fisher, it is "contrary to appropriate jail administration to hire convicted felons, put the convicted felon in a

supervisory position over both kitchen finances and kitchen inmate 'trustees' and/or hire the convicted felon for such a role in the jail the very day he is released from custody in the same jail." [*Id.* at 3].

Mr. Fisher next states that placement of defendant Lintner in a position of supervision was "a clear case of deliberate indifference on the part of Jail Management." [*Id.*]. The basis for this opinion is that it "is inappropriate to place that person into a position of authority and/or supervision who is a convicted felon who has recently been part of the inmate population." [*Id.*]. In addition, Mr. Fisher states that allowing defendant Lintner to select the inmates who would be kitchen trustees was "not standard correctional practice on the part of jail management." [*Id.*] "The standard correctional practice is for security to initially vet and choose possible inmate workers and then to send the approved list of potential inmate workers to food service for them to then make a decision of selection." [*Id.*]

For his third opinion, Mr. Fisher states that, after defendant Lintner was given a supervisory position, the lack of supervision and failure to monitor his behavior was "a clear case of deliberate indifference on the part of jail management and is a conscious disregard by jail management of a risk of harm to inmates." [*Id.*]. Mr. Fisher finds it "inconceivable" that Sheriff Seals, Captain Parton, and Captain Hatcher were unaware of defendant Lintner's conduct as a supervisor of trustees.

> There were numerous red flags concerning Mr. Lintner's actions, including allowing inmates to smoke, giving gifts to inmates, inappropriate touching of the inmates (such as hugging and patting inmates on the "butt"), inappropriate comments to and about the inmates, taking inmates on trips outside the jail to the Golden Corral and exercising the authority and power to "lock-down"

3

inmates. This clearly demonstrate a pattern of open, obvious and pervasive conduct in direct contravention of jail rules and accepted standards of jail administration on his part such that the Defendant county knew of his conduct. Mr. Lintner testified that he did not attempt to hide his inappropriate actions. Further, a jail such as Sevier County's is not that big of a place and behaviors such as this become common knowledge very quickly. Such conduct raised significant red flags and should have resulted in his immediate dismissal.

    The entire department, including the named defendants, had a policy of inaction when it came to Defendant Lintner. Defendant Lintner openly violated multiple jail policies, including inappropriate sexual and fraternizing behavior. On at least one occasion, the acting Sheriff was made aware and gave Mr. Lintner permission to take an inmate, Mr. Rose, out of the jail and to his home at Christmas time. On another occasion, Defendant Parton became aware that Defendant Lintner conducted visual inspections of inmates such that Mr. Lintner saw their genital area. Mr. Lintner claims these examinations were for medical purposes. According to jail policy, Mr. Lintner was not authorized or trained to conduct such examinations, which he did on multiple occasions and it was unreasonable for him to think he could do so. It was an obvious violation of jail policy for any non-medical employee to engage in this, and Mr. Lintner's doing so should have resulted in immediate termination. However, there was inaction.

[*Id.* at 3-4].

Mr. Fisher also notes that, pursuant to jail policy and according to the chain of command, Captain Parton was one of defendant Lintner's supervisors, and that defendant Lintner "had loaned substantial amounts of money on several occasions to Operations Captain Parton as well as paying half of the travel expenses for two vacations he took with Captain Parton and Captain Parton's wife." [*Id.* at 4]. According to Mr. Fisher, "[i]t is at best awkward and at worst an impossibility to supervise someone who is loaning you money." [*Id.*].

4

Mr. Fisher next states that the retention of defendant Lintner as a supervisor after learning of his inappropriate conduct was "a clear case of deliberate indifference on the part of Sevier County." [*Id.*]. The basis for this opinion is that defendant Lintner was "retained as an employee of the county in a supervisory capacity even after he was accused by two inmates of inappropriate conduct." [*Id.* at 5]. Mr. Fisher notes that the abuse of plaintiff occurred after the prior complaints and thus "the Sheriff and his staff consciously disregarded the risk of harm to inmates including the Plaintiffs."

For his fifth opinion, Mr. Fisher states that defendant Lintner "was the policy maker for the jail's food service operation and the supervisor of the kitchen inmate 'trustees.'" [*Id.*]. According to Mr. Fisher, defendant Lintner "was free to set policy regarding the food service operation and the kitchen trustees" and thus his "actions represented official policy for the Defendant Sevier County." [*Id.*].

Mr. Fisher next states that "Defendant Sevier County's policies and procedures and/or training of its employees to address conduct of an employee such as that committed by Mr. Lintner were inadequate." [*Id.*]. The basis for this opinion is that the "defendants and other employees of the Sevier County Jail were knowingly allowing numerous violations of their own policies to take place in this case, which indicates a lack of training and supervision with respect to Mr. lintner's behavior as described above." [*Id.*]. In Mr. Fisher's opinion, "[t]raining of all employees to timely report such policies and procedures violations and for a department to enforce such policies and procedures are absolutely necessary to the efficient

5

operation of a penal institution and to ensure the safety of the institution's inmates and employees." [*Id*.]. Mr. Fisher further notes as follows:

> It is clear from the testimony to date in this matter that the Sheriff and his designees failed to understand the importance of training department employees as to the policies such that employees will be aware of what steps to take to make the jail administration aware of inappropriate conduct on the part of a jail employee and enforcing the policies to stop such conduct in order to protect the inmates.

[*Id*. at 5-6].

Finally, Mr. Fisher gives his seventh and last opinion that "[t]he multiple acts and omissions of the Defendant Sevier County as described above, through its elected officer, the Sheriff, and his designated supervisors in the Sheriff's Department, resulted in the abusive conduct complained of in this lawsuit." [*Id*. at 6].

Defendants move to exclude the expert testimony of Charles G. Fisher, with respect to both the pending motion for summary judgment and, if necessary, the trial of this case. Defendants aver that Mr. Fisher's opinions do not meet the standards required for expert opinions as set forth in Rule 702 of the Federal Rules of Evidence and explained in *Daubert v. Merrill Pharmaceuticals, Inc*., 509 U.S. 579 (1993).

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

6

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

The trial judge must act as a gatekeeper, admitting only that expert testimony that is relevant and reliable. *Daubert*, 509 U.S. at 589. With regard to scientific knowledge, the trial court must initially determine whether the reasoning or methodology used is scientifically valid and is properly applied to the facts at issue in the trial. *Id.* To aid the trial court in this gatekeeping role, the Supreme Court has listed several key considerations: (1) whether the scientific knowledge can or has been tested; (2) whether the given theory or technique has been published or been the subject of peer review; (3) whether a known error rate exists; and (4) whether the theory enjoys general acceptance in the particular field. *Id*. at 592-94.

Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (6th Cir.1994). The trial court's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152. The trial judge enjoys broad

discretion in determining whether the factors listed in *Daubert* reasonably measure reliability in a given case. *Id*. at 153.

In objecting to Mr. Fisher's opinions, defendants contend that the opinions are devoid of analysis or explanation of methodology, and that the opinions are not reliable. The defendants cite *Kumho Tire* for the proposition that an expert witness must possess more than generalized expertise; the witness must have sufficient specialized knowledge about the specific issues in the case before the court. 526 U.S. at 156-57. They also cite to *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994), in which the Sixth Circuit noted that "there is no such 'field' as 'police policies and practices'" and that the term "police policies and practices" "is so broad as to be devoid of meaning." *Id*. at 1352. For that reason, the Sixth Circuit in *Berry* concluded the district court erred in allowing expert testimony as to "proper police policies and practices." *Id*.

In *Champion v. Outlook Nashville, Inc*., 380 F.3d 893 (6th Cir. 2004), however, the Sixth Circuit clarified that *Berry* "did not hold that an individual cannot ever testify as an expert about some aspect of police affairs." *Id*. at 908. The court concluded that "the district court did not abuse its considerable discretion in admitting" expert evidence because the expert "had considerable experience in the field of criminology and because he was testifying concerning a discrete area of police practices about which he had specialized knowledge." *Id*. at 909. As the Sixth Circuit noted, "[c]ourts have permitted experts to testify about discrete police-practice issues when those experts are properly credentialed and their testimony assists the trier of fact. *Id*. (citation omitted).

8

Upon reviewing Mr. Fisher's *curriculum vitae*, the court finds that he is a highly qualified expert in the area of jail administration. He has, among other things, worked in jails; he has served the Tennessee Corrections Institute as a training director, as an assistant director, and as a senior detention specialist; he has served as a special master in both federal court and a local jail; he has developed state regulations for construction and operation of all adult and juvenile county and city detention centers in Tennessee; and he has helped develop a national training program for jail inspectors.

The defendants insist, nevertheless, that Mr. Fisher's expert testimony will not assist the trier of fact because he cannot testify as to legal conclusions, specifically deliberate indifference on the part of the defendants. Rule 704(a) of the Federal Rules of Evidence provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." In fact, in *Heflin v. Steward County, Tennessee*, 958 F.2d 709 (6th Cir. 1992), the Sixth Circuit found the district court did not commit "reversible error" in allowing an expert witness to testify that prison officials were "deliberately indifferent" to the medical needs of a pretrial detainee. *Id*. at 715. The reason for the ruling was that the expert "used 'deliberately indifferent' in the way an ordinary layman would to describe such conduct -- to state his opinion on the ultimate fact, not to state a legal conclusion." *Id*.

In *Berry v. City of Detroit*, however, the Sixth Circuit reversed a jury award in favor of the plaintiff, because the trial court allowed an expert witness to testify that the defendant "was *deliberately indifferent* to the welfare of its citizens." 25 F.3d at 1353. The court noted

9

that "'deliberate indifference' is a legal term" and thus the expert's testimony went to the ultimate issue of liability. *Id*. at 1353-54.

Likewise, in *Woods v. Lecureux*, 110 F.3d 1215 (6th Cir. 1997), the Sixth Circuit found that, based upon the Rules of Evidence as a whole, "testimony offering nothing more than a legal conclusion – i.e., testimony that does little more than tell the jury what result to reach – is properly excludable under the Rules." *Id*. at 1220. For that reason the court held that the district court did not abuse its discretion in excluding expert testimony of "deliberate indifference." *Id*. at 1221.

Based upon the foregoing, the court finds that Mr. Fisher may not testify as to whether in his opinion the defendants' alleged conduct constituted deliberate indifference toward the plaintiff. Mr. Fisher may testify, however, whether in his opinion the defendants' alleged conduct was contrary to appropriate jail administration and/or standard correctional procedures, and whether in his opinion the alleged actions of the defendants violated jail policy or procedure. He may also testify as to what constitutes standard correctional procedures for a local jail.

Finally, the court notes that the defendants object to any opinion evidence that conflicts with the defendants' testimony as to their state of mind or knowledge. The defendants specifically refer to Mr. Fisher's opinion that the defendants must have been aware of defendant Lintner's inappropriate conduct towards jail inmates. This objection, however, goes to the credibility and not the admissibility of Mr. Fisher's testimony.

10

Based upon the foregoing, the defendants' motion in limine to exclude the expert opinions of Charles G. Fisher is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent Mr. Fisher may not testify as to whether in his opinion the defendants' alleged conduct constituted deliberate indifference toward the plaintiff. The motion is **DENIED** to the extent Mr. Fisher may testify whether in his opinion the defendants' alleged conduct was contrary to appropriate jail administration and/or standard correctional procedures, and whether in his opinion the alleged actions of the defendants violated jail policy or procedure. He may also testify as to what constitutes standard correctional procedures for a local jail.

The court also finds that the opinions offered by Mr. Fisher, at least to the extent that he does not reach legal conclusions, are sufficiently supported by the record for purposes of summary judgment. To the extent Mr. Fisher states opinions that constitute legal conclusions, the court will not rely upon those opinions. The fact that portions of Mr. Fisher's opinions constitute inadmissible legal conclusions will not prevent the court from considering other aspects of his opinions.

**ENTER:**

    s/ Thomas W. Phillips
United States District Judge

11